**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Troy J.B., | No. 25-cv-2545 (KMM/DLM) |
| Plaintiff, | |
| v. | **REPORT AND** |
| | **RECOMMENDATION** |
| Frank Bisignano, | |
| Commissioner of Social Security, | |
| Defendant. | |

This Social Security benefits case raises the question: if a claimant can only tolerate limited contact with other people, can they work at a job that might require more significant contact during that job's short training period? Consistent with the bulk of authority, this Court concludes that a person's ability to tolerate a limited amount of contact with others on a regular and continuing basis does not automatically disqualify them from performing a job that requires increased interactions during a training period.

In this case, Plaintiff Troy B. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under 42 U.S.C. § 405(g). He argues that the Administrative Law Judge ("ALJ") deciding his case erred by finding that Plaintiff could perform three representative jobs, where each of those jobs required training-period interactions that might be greater than Plaintiff's general limitations on interacting with others. The case has been referred to the undersigned magistrate judge for a Report and

Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons that follow, the Court recommends that the Commissioner's denial of benefits be affirmed.

## BACKGROUND

Because of the relatively specific nature of Plaintiff's challenge, the Court will only briefly address the history of this matter. Plaintiff applied for SSI benefits on April 18, 2023. (Tr.[1] at 217-29.) His claim was denied initially (Tr. at 127-30) and on reconsideration (Tr. at 132-35). Plaintiff then requested a hearing before an ALJ (Tr. at 135), and that hearing occurred on July 24, 2024 (Tr. at 41-59).

At Plaintiff's hearing, he was represented by counsel and testified on his own behalf. (Tr. at 42-51.) The ALJ also called Mark Pinti as a vocational expert. (Tr. at 51.) The ALJ and Plaintiff's counsel questioned Mr. Pinti about whether there were jobs in the national economy that a person with Plaintiff's limitations could perform. (Tr. at 51-58.) Relevant to this appeal, the ALJ indicated that any representative jobs should be limited to those that required no more than occasional interaction with supervisors, coworkers, and the general public throughout the workday. (Tr. at 56.) With that (and other) limitations, Mr. Pinti opined that someone with Plaintiff's limitations could work at least three jobs listed in the

---

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on August 19, 2025. (Doc. 8.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the cited document rather than docket page number or exhibit number.

Dictionary of Occupational Titles ("DOT"): Housekeeper/Cleaner (DOT 323.687-014), Folder (DOT 789.687-066), and Mail Clerk (DOT 209.687-026).[2]

Upon examination by Plaintiff's attorney, Mr. Pinti agreed that the three representative jobs "were all SVP 2"[3] when it came to the length of training needed. Counsel then engaged in the following exchange with Mr. Pinti:

> Q:      Okay. Okay. If we were to assume a hypothetical individual who was going to be unable to interact with their coworkers and supervisors for at least two-thirds of the workday during that training period, they wouldn't be able to be trained for those jobs, isn't that also accurate?
>
> A:      Yes.
>
> Q:      And that's because during the initial training period somebody needs to be able to interact with their trainer for greater than a third of the workday, right?
>
> A:      Yes.
>
> Q:      And this is kind of just a common sense thing, but in order to perform work and maintain work somebody first needs to be trained for that work, isn't that also accurate? And you can't—you would have—

---

[2] The vocational expert initially determined that someone with Plaintiff's limitations could also perform the job of Ticket Seller (DOT 211.467-030), but withdrew that opinion once the ALJ clarified the scope of Plaintiff's limitations on interacting with others. (Tr. at 53, 56.)

[3] "SVP" is an abbreviation for Specific Vocational Preparation, which "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT App. C. II (1991), https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC [https://perma.cc/794H-2AZB]. The DOT uses a 7-level SVP scale, with the lowest SVP Level of 1 meaning that the job can be trained with a short demonstration only, and the highest SVP Level of 7 meaning a job that requires over 10 years of training. *Id.* SVP Level 2 is for jobs that require a training range of "[a]nything beyond short demonstration up to and including 1 month." *Id.*

A: I would say short demonstration doesn't necessarily [require] much training. It would just say here, sort these things out or something, or—

Q:      It would be beyond short demonstration.

A:      —then it will—I'm sorry. Maybe I missed that. Go ahead, ask it again.

Q:      No, no, no. You're mentioning short demonstration but these are SVP 2 jobs so by definition they go beyond short demonstration. So at least to me—and it doesn't even matter, short demonstration or not. I guess my point is somebody needs to be shown how to do work before they're able to be able to successfully do it on their own, isn't that accurate?

A:      Yes, if they've never done the work before, yes.

ATTY:      Okay, thank you, I don't have any additional questions.

(Tr. at 57-58.)

Following Plaintiff's hearing before the ALJ, his attorney filed a brief objecting to the ALJ's consideration of the vocational expert's testimony. (Tr. at 341-42.) In that brief, Plaintiff asserted that the vocational expert's testimony was incurably inconsistent because he opined that a person with Plaintiff's limitations could perform three jobs that required training at an SVP level 2, but later testified that someone with Plaintiff's limitations could not tolerate the training-period contact required for an SVP 2 job. (Tr. at 341-42.)

On August 8, 2024, the Commissioner issued notice of an unfavorable decision to Plaintiff. (Tr. at 14-16 (Notice), 17-31 (Decision).) In that decision, the ALJ recognized Plaintiff's several severe and non-severe impairments to his mental and physical health. (*See generally* Tr. at 20-22.) Considering those impairments, the ALJ determined that

4

Plaintiff retained the residual functional capacity ("RFC")[4] to perform light work as defined by 20 C.F.R. § 416.967(b),[5] provided that the work included a number of additional restrictions to account for Plaintiff's limitations. (Tr. at 22.) Those restrictions included a limitation "to occasional contact with supervisors, coworkers, and the general public throughout the work day." (Tr. at 22.) With all of Plaintiff's limitations in place, the ALJ determined that Plaintiff's RFC left him able to perform the jobs of Housekeeper/Cleaner (DOT 323.687-014), Folder (DOT 789.687-066), and Mail Clerk (DOT 209.687-026)— the three representative occupations identified by the vocational expert. (Tr. at 29.)

The ALJ also considered Plaintiff's brief objecting to the vocational expert's testimony. (Tr. at 29.) In resolving the apparent conflict in the vocational expert's testimony, the ALJ stated:

> The vocational expert identified the jobs above as suitable for individuals limited to occasional contact with supervisors, coworkers, and the general public throughout the workday. On cross examination, the vocational expert testified that an employee who could not interact with his co-workers and supervisors for at least two thirds of the workday during that training period would not be able to receive proper training for those occupations. (Hearing). However, the Dictionary of Occupational Titles identifies training for a SVP two job as requiring "anything beyond a short demonstration [of the kind required for SVP one work] and up to and including one month." The range of training required begins at just beyond a short demonstration and ends at "up to and including one month," but does not require the training to last for

---

[4] "RFC is defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007)) (cleaned up).

[5] By regulation, "light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). *See also* 20 C.F.R. § 416.967(b). Even if the weight lifted is very little, "a job is in this category if it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b); *see also* 20 C.F.R. § 416.967(b).

> a month in all cases. Because a requirement of contact with co-workers and employees for at least two thirds of the day is not a natural inference from "anything beyond a short demonstration," I find the vocational expert's testimony to be in conflict with the Dictionary of Occupational Titles. Since the vocational expert did not explain his change in testimony in this area, I cannot pick and choose between his testimony on direct versus cross examination. Thus, I give greater weight to the requirement of the Dictionary of Occupational Titles than to the vocational expert's revised opinion in this area.

(Tr. at 30 (alteration in original).) Ultimately, the ALJ determined that Plaintiff was not disabled. (Tr. at 31.) Plaintiff timely appealed the ALJ's decision to the Appeals Council (Tr. at 215-16), which denied Plaintiff's request for review (Tr. at 1-4). Accordingly, the ALJ's decision is the final decision subject to this Court's review.

In his appeal, Plaintiff does not assert that the ALJ failed to follow the five-step sequential process laid out in 20 C.F.R. § 416.920(a)(4)[6] for evaluating SSI. Nor does he suggest the ALJ erred in determining Plaintiff's impairments, or the severity of those impairments. Rather, he asserts that the ALJ erred at step five of the sequential process by determining that there were representative occupations that a person with Plaintiff's limitations could perform. Specifically, Plaintiff contends that because he was limited to

---

[6] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under appendix 1 to subpart P of part 404. If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and determine (at step four) whether the claimant can still do their past work given their limitations. Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(i-v), (d-e).

occasional workplace interactions with others, he could not actually perform any of the representative occupations—each of which required interactive training beyond the occasional level. Without evidence of any jobs that Plaintiff could perform, he argues, it was error for the ALJ to determine he was not disabled.

## ANALYSIS

This Court reviews an ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision is infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1089 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to determine whether it contains sufficient evidence to support (or detract from, as the case may be) the ALJ's conclusion. *Biestek*, 139 S. Ct. at 1154; *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). Where substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089.

It is not entirely clear whether Plaintiff asserts legal error or an evidentiary void. On one hand, he asserts that the ALJ failed to identify any jobs a person with Plaintiff's limitations could perform, which reads as a request for evidentiary review. (Doc. 10 at 6.)

Plaintiff, on the other hand, subsequently attacks the ALJ's failure to credit the vocational expert's testimony (*id*.), which reads as a purported error of law. *See, e.g.*, *Lucus v. Saul*, 960 F.3d 1066, 1068-70 (8th Cir. 2020).

Properly framed, the Court views Plaintiff's challenge as primarily a question of legal error, with a substantial-evidence review tagging along. After all, the vocational expert testified that Plaintiff could perform the three representative jobs on a regular basis (save for training). (*See* Tr. at 53, 56; *accord* SSR 24-3p (indicating vocational experts may testify about requirements of occupations as regularly performed).) And the vocational expert also opined about Plaintiff's possible inability to perform certain training aspects of the three representative jobs. (Tr. at 57-59; *accord* SSR 24-3.) The real question, then, is whether the ALJ erred in crediting the vocational expert's testimony that there were three representative jobs Plaintiff could perform on a daily basis, but then discounting the vocational expert's testimony that training for those jobs may be beyond Plaintiff's capacity for workplace interactions. This is a question of legal error, since it calls for an examination of the ALJ's framework for evaluating testimony. *Cf. Nowling v. Colvin*, 813 F.3d 1110, 1122 (8th Cir. 2016) (evaluating ALJ's witness-credibility determinations under legal error standard, premised on ALJ's duty to fully develop the record); *accord* SSR 24-3p (directing ALJ how to consider and evaluate vocational expert testimony). If there is none, the Court then considers whether the ALJ's ultimate decision was supported by substantial, appropriately-considered evidence.

The Court finds no legal error here. The ALJ appropriately discredited the vocational expert's testimony that Plaintiff could not receive proper training for any of the

representative occupations because of interaction limitations. Each of the representative jobs was listed in the DOT, and the training requirements for each job—SVP 2—were also listed in the DOT. As the ALJ properly noted, SVP 2 jobs do not (per the DOT) require the ongoing, hovering presence of a supervisor or coworkers. Rather, the training for SVP 2 jobs is a range of "anything beyond a short demonstration up to and including 1 month" of training time. DOT App. C. II, (1991) https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC [https://perma.cc/794H-2AZB]. And each of the representative jobs would require only a "Level 8" amount of personal interaction, per the DOT's nine-digit code. Level 8 interaction means "[a]ttending to the work assignment instructions or orders of a supervisor. (No immediate response required unless clarification of instructions or orders is needed.)" *See* DOT App. B, Explanation of Data, People and Things (1991), https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPB [https://perma.cc/5AN4-XX6F]; *Tiffany B. v. Kijakazi*, No. 22-cv-1227 (ECT/DLM), 2023 WL 3958424, at *5 (D. Minn. May 22, 2023) (noting that a "Level 8" job has the lowest level of interpersonal interaction recognized by the DOT), *R. & R. adopted*, 2023 WL 3955348 (D. Minn. June 12, 2023).

It would be quizzical to find that a person could only perform the most limited interaction day to day as contemplated by a Level 8 occupation, yet conclude that same person would be subject to near-constant training through an SVP 2 onboarding process. This is why, no doubt, SVP 2 includes a time range of training that can last anywhere from a very short period to a month, with no indication of what the actual, day-to-day

interactions may entail. And it is also why the majority of courts—including courts in this district—have rejected Plaintiff's theory. *See, e.g.*, *Cody H. v. Bisignano,* No. 24-cv-03056 (PJS/ECW), 2025 WL 1788474, at *17 (D. Minn. June 11, 2025), *R. & R. adopted*, 2025 WL 1787562 (D. Minn. June 27, 2025) (rejecting plaintiff's argument that enhanced interactions during training period is inconsistent with occasional-interaction limitation); *Robin S. v. Comm'r of Soc. Sec.*, No. 24-cv-06904, 2025 WL 1431084, at *10 (D.N.J. May 19, 2025) ("To the extent Plaintiff suggests that interaction requirements during a probationary period may exceed occasional, courts have rejected this theory." (citing *Rebecca L. v. Comm'r of Soc. Sec.*, 617 F. Supp. 3d 256, 273 (D.N.J. 2022)); *Horos v. Kijakazi*, No. 3:21-cv-01803, 2023 WL 2742754, at *3 (M.D. Pa. Mar. 31, 2023) (noting "an interaction level during a probationary training period that briefly exceeds occasional does not preclude an individual limited to only occasional interaction from doing that job"); *Suchini v. Comm'r of Soc. Sec.*, No. 8:24-cv-01467-KCD, 2025 WL 913765, at *3 (M.D. Fla. Mar. 26, 2025). This makes sense, as a person's RFC describes what that person can do for work on a regular and continuing basis, not what they can do during a brief training period. *See Nicholson v. Comm'r of Soc. Sec.,* No. 1:25-cv-2257, 2026 WL 1242877, at *13 (N.D. Ohio May 6, 2026); *Jonathan Daniel G. v. Saul*, No. 20-cv-3160, 2022 WL 972407, at *2 (N.D. Ill. Mar. 31, 2022) ("The Seventh Circuit has not decided whether an RFC that limits a claimant to brief and superficial interaction precludes performance of a job that requires more interaction during the training period. However, as the Commissioner points out, the very definition of RFC suggests that it does not.").

Plaintiff notes that in *Bernard L. v. Saul*, No. 19-cv-1223, 2020 WL 7027637 (N.D. Ill. Nov. 30, 2020), a court faced with a similar issue found the ALJ erred. But *Bernard L.* is different. There, the vocational expert initially testified Plaintiff could perform three representative jobs with SVP 2 training periods, but then testified that because of interaction limitations Plaintiff could not make it through the 30-day training period for those jobs. The *Bernard L.* court noted that the contradiction in the vocational expert's testimony went unresolved, and "the ALJ's decision ignores this issue entirely." *Id.*, 2020 WL 7027637, at *3. In contrast, the ALJ here did *not* "ignore" the issue of apparent conflict. Rather, the ALJ weighed the vocational expert's testimony against other sources—namely the DOT itself—and credited the DOT's description of SVP 2 training periods rather than the vocational expert's. *Accord* SSR 24-3p (recognizing DOT "as a valid and reliable source of occupational information"). There is no legal error here.

Finding the ALJ appropriately considered the vocational expert's testimony in conjunction with other appropriate evidentiary sources (such as the DOT[7]), the Court further finds that substantial evidence supports the ALJ's conclusion that Plaintiff could perform jobs within his RFC restrictions. The Court appropriately weighed the evidence in concluding Plaintiff could perform the three representative occupations on an everyday basis, and significant evidence supports that decision. That is all that is required to sustain the Commissioner's decision on substantial evidence review.

---

[7] "We continue to recognize the DOT as a valid and reliable source of occupational information, and we will continue to use it in adjudication." SSR 24-3p.

## RECOMMENDATION

Based on the above findings, as well as the files, records, and proceedings in this case, **IT IS RECOMMENDED** that:

1.    Plaintiff's request to reverse or remand the decision of the Commissioner (Doc. 10) be **DENIED**; and

2.    Defendant's request to affirm the decision of the Commissioner (Doc. 19) be **GRANTED**.

DATED:  July 10, 2026                    _s/Douglas L. Micko_____
                                        DOUGLAS L. MICKO
                                        United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served with a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).